IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Olga SMITH, <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 18-00697 (RBK) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Olga Smith's appeal (Doc. No. 1) from the Commissioner of Social Security's final decision denying Plaintiff's application for benefits under the Social Security Act. For the reasons below, the Court **VACATES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this Opinion.

## I. BACKGROUND

The Court recites only the facts that are necessary for context and to its determination on appeal, which is narrow.

### A. Procedural History

Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income on July 15, 2013, alleging disability beginning on February 16, 2011. (R. at 20.) Plaintiff alleged disability based on various mental and physical conditions, including Lyme's disease, migraines, chronic vertigo, depression, anxiety, fibromyalgia, sleep apnea, fatigue, lack of concentration, and most importantly, hidradenitis suppurativa. (R. at 226.) Plaintiff's claims

were denied initially on March 18, 2014 and upon reconsideration on June 17, 2014. (R. at 20.) Plaintiff then requested a hearing, which occurred on July 14, 2016. (R. at 20.) At the hearing, Plaintiff requested through counsel that the Administrative Law Judge ("ALJ") consider a closed period of disability from February 16, 2011 to September 30, 2013, when Plaintiff improved and returned to work. (R. at 20, 45.)

In a decision dated October 4, 2016, the ALJ found that Plaintiff was not disabled between February 16, 2011 and September 30, 2013. (R. at 20.) Thereafter, the Appeals Council affirmed the ALJ's decision, rendering the ALJ's decision the Commissioner's final determination. (R. at 1.)

**B. Medical and Plaintiff's History**

Plaintiff was born on June 2, 1985 and was 31 years old at the time of the hearing. (R. at 43.) Plaintiff is five feet, six inches tall, weighing 220 pounds with a body mass index of 40.9. (R. at 24, 43.) After earning her BA in Criminal Justice, Plaintiff worked various jobs. (R. at 44–51.) She testified, however, that her impairments prevented her from performing her job duties and caused her to miss many days from work. (R. at 45–48.)

At her hearing, Plaintiff elaborated on her conditions, including her hidradenitis. (R. at 52.) According to Plaintiff, this disease prevented her from performing basic functions like lifting her arms because they were swollen. (R. at 52.) She also stated that because of her hidradenitis, her glands swelled to the size of golf balls, and this swelling occurred in her groin and chest, causing both pain and shortened breath. (R. at 61.) Plaintiff similarly noted that she suffered from constant shooting pain everywhere, mainly in her back and legs. (R. at 26.) Plaintiff even explained that her hidradenitis caused numbness and tingling in her hands, resulting in difficulty grasping objects. (R. at 62.) According to Plaintiff, she could not recall a

time before she received surgery when her glands were not swollen, though she tried to keep herself moving when possible because she often could do nothing at all. (R. at 58, 62.)

Plaintiff also provided medical records pertaining to her hidradenitis from both before and after her alleged disability onset date of February 16, 2011. Plaintiff provided, for example, a record from December 9, 2010, in which Doctor David W. Galetto noted that Plaintiff experienced tenderness in the right axilla and swollen sweat glands from her hidradenitis suppurativa, causing severe pain and fever. (R. at 342.) Dr. Galetto also explained that Plaintiff informed him that it was not unusual for her to develop axillary nodules, and that these nodules were so painful that she sought treatment at a hospital. (R. at 342.) According to other medical records, in September 2011, Plaintiff was admitted to the hospital and underwent an incision, drainage, and debridement of the right axillary abscess, a lesion that doctors broke down and sent for culture. (R. at 27, 434.) As the ALJ's decision noted, about one week later, Plaintiff was discharged with recent hidradenitis, status post incision and drainage. (R. at 27.) Thereafter, Plaintiff indicated that she experienced discomfort, swelling, shortened breath, numbness and tingling in her hands and feet, and fatigue. (R. at 27.)

Medical records from Vineland Dermatology Associates in April 2013 further indicate that Plaintiff suffered from axillary hidradenitis with hyperpigmentation and mild erythema. (R. at 348.) The same records also indicate that although doctors tried to treat the hidradenitis with cortisone, Plaintiff required surgery, and that Plaintiff suffered from scattered scales and red papules on her skin—including her scalp, face, and trunk. (R. at 348–349.) In her September 13, 2013 medical source statement, Plaintiff's treating physician, Olga Kaczaj, listed hidradenitis suppurativa of the axillaes as her first diagnosis. (R. at 379.)

In September 2013, Plaintiff underwent another excision, this time of bilateral hidradenitis in both axillae. (R. at 368–378.) After this surgery, Plaintiff experienced some relief. (R. at 364–365.) Medical notes from a consultative examination stated that Plaintiff's hidradenitis involved both axillae, but noted Plaintiff had improved regarding this issue. (R. at 364–365.)

### C. ALJ's Decision

The ALJ followed the five-step sequential evaluation process for disability claims and found that Plaintiff was not disabled during the period at issue. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged onset date of February 16, 2011. (R. at 22.) At step two, the ALJ found that since Plaintiff's alleged onset date, she suffered from severe impairments, including Lyme's disease, hidradenitis, vertigo, migraine headaches, obesity, major depressive disorder, generalized anxiety disorder, and panic disorder. (R. at 23.)

Most relevant to this appeal, the ALJ concluded at step three that although Plaintiff suffered from severe impairments at step two, she had no impairment or combination of impairments that met or medically equaled the severity of one of the Listed impairments. (R. at 23–26.) In reaching this conclusion, the ALJ considered various listing, but not Listing 8.06 (hidradenitis suppurativa). (R. at 23.)

The ALJ then discussed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff could perform sedentary work with certain restrictions. (R. at 26.) The ALJ found, for example, that Plaintiff was limited to frequent pushing and pulling with the upper extremities, occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 26.) The ALJ also found Plaintiff limited to frequent reaching, handling, fingering, and feeling and that

4

she must avoid concentrated exposure to extreme heat and hazards. (R. at 26.) Finally, the ALJ explained that Plaintiff is limited to unskilled work involving routine and repetitive tasks with occasional changes in the work setting; rather than quota or production-based work, the ALJ explained, Plaintiff is limited to goal-oriented work. (R. at 26.)

Based on this RFC and Plaintiff's age, education, and work experience, the ALJ concluded that jobs existed in the national economy that Plaintiff could perform. (R. at 30.) Thus, the ALJ denied Plaintiff's application for benefits. (R. at 30–31.) Claiming that the ALJ's decision is flawed, Plaintiff now asks this Court to remand the matter for further proceedings. (Doc. No. 9 ("Pl.'s Br.").) Defendant contends that there are no such errors. (Doc. No. 14 ("Def.'s Br.").)

## II. LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether substantial evidence supports the decision after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's

decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ used the established five-step evaluation process to decide Plaintiff's case. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden to establish her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must show that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's Listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a Listed impairment, the

6

claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, Plaintiff challenges several aspects of the ALJ's decision. (Pl.'s Br. at 10–16.) But because the Court agrees that the ALJ erred at step three of the evaluation process and remands on that basis, the Court does not reach the parties additional arguments on the subsequent steps.

### A. The ALJ Erred at Step Three

Plaintiff argues that substantial evidence does not support the ALJ's decision because he did not consider whether Plaintiff's hidradenitis suppurativa met Listing 8.06 (which deals specifically with that condition) even though he found it severe at step two. (Pl's Br. at 10–12.)

At step three, "an ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals," one of the Commissioner's Listed impairments. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009). If, for example, a claimant shows that "his severe impairment satisfies the criteria" for a Listed impairment, the claimant is deemed disabled and entitled to benefits. *Nelson v. Comm'r of Soc. Sec.*, 101 F. App'x 884, 886 (3d Cir. 2004); *see also Palmisano v. Comm'r of Soc. Sec.*, No. 09-cv-03410, 2010 WL 3810659, at *3 (D.N.J. Sept. 23, 2010). To meet Listing 8.06, a claimant must show "Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed."

*Fullen v. Colvin*, No. 15-cv-675, 2016 WL 6205292, at *3 (W.D. Pa. Oct. 24, 2016). Although at step three, the ALJ need not "use particular language or adhere to a particular format," the ALJ's decision, "read as a whole," must "set forth the reasons for his decision." *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000)). In other words, an ALJ must sufficiently develop the record and explain his findings "to permit meaningful review" on appeal. *Id.* at 505.

Here, substantial evidence does not support the ALJ's step three decision because it lacks reasoning as to Plaintiff's hidradenitis suppurativa and is beyond meaningful review. As Plaintiff notes, the ALJ found Plaintiff's hidradenitis suppurativa severe at step two. Yet he never mentioned it at step three, lest consider it under Listing 8.06. Courts have remanded on this basis alone. *See Ibanibo v. Comm'r of Soc. Sec.*, No. 11-cv-3822, 2012 WL 2945748, at *7 (D.N.J. July 18, 2012) (remanding because the "ALJ failed to consider [plaintiff's] diagnoses of hypertension and a post-repaired aortic aneurysm at step three of the analysis, despite including them as severe impairments at step two"); *Malone v. Barnhart*, No. 05-cv-2991, 2008 WL 4155707, at *9 (E.D. Pa. Aug. 14, 2008) (remanding because at step three, the ALJ "failed to mention anything about [plaintiff's] anemia . . . even though he found it to also be a severe impairment," and thus the ALJ "did not properly consider whether [plaintiff was] presumptively disabled due to her anemia").

The ALJ also failed to discuss Plaintiff's evidence that could be relevant to whether she meets Listing 8.06. Defendant suggests that any such error was harmless because Plaintiff adduced no evidence to meet the Listing. (Def.'s Br. at 7–8.) Although in some instances, such errors may be harmless, this is not a case where the record "quite clearly does not satisfy the requirements" of the Listing. *See Woods v. Comm'r of Soc. Sec.*, No. 16-cv-01657, 2017 WL

2815075, at *12 (D.N.J. June 29, 2017); *see also Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding conclusory statement in step three analysis a harmless error when panel found "abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence").

Instead, Plaintiff points to record evidence and suggests that it meets all of the Listing's parts. (Pl.'s Br. at 10–12.) Whether or not it does, the ALJ should have discussed it here. As another court has explained, when "there is an apparent basis in the medical evidence to support a finding of the presence of the essential elements of a Listing definition must, to be rational and complete . . . state findings as to each of the elements of the appropriate Listing(s) and an explanation for why the claimant is found or not found to meet or equate to that element." *See Hoffman v. Astrue*, No. 11-cv-1227, 2011 WL 7070955, at *4 (M.D. Pa. Dec. 16, 2011). On this record, the Court declines Defendant's invitation to engage in fact-finding to determine whether Plaintiff meets Listing 8.06. That is best left to the ALJ.[1]

Remand is also appropriate in light of the ALJ's analysis at subsequent steps. In some cases, analysis at other steps may support an ALJ's step three conclusion because courts read decisions as a whole, and they need not adhere to a particular format. *See Luna v. Comm'r of Soc. Sec.*, No. 14-cv-6953, 2016 WL 3763339, at *5 (D.N.J. July 13, 2016); *see also Karstein*, 2018 WL 5669172, at *7 n.2 (citing *Allen v. Comm'r of Soc. Sec.*, No. 10-cv-2614, 2011 WL 1321985, at *9 (D.N.J. Mar. 30, 2011)). And here, the ALJ did mention at other steps some of

---

[1] *See Karstein v. Comm'r of Soc. Sec.*, No. 17-cv-04502, 2018 WL 5669172, at *8 (D.N.J. Oct. 31, 2018) (remanding for insufficient step three analysis and noting that "fact-finding is 'more appropriately reserved for the ALJ'" (quoting *Pizarro v. Colvin*, 208 F. Supp. 3d 669, 675 (E.D. Pa. 2016)); *Hemphill v. Massanari*, No. 01-cv-1064, 2002 WL 32348348, at *3 (E.D. Pa. Apr. 5, 2002) (declining to "weigh the evidence in order to determine if the plaintiff's impairment meets or equals the relevant medical listing" because such tasks "are within the ALJ's area of expertise, and are for the ALJ in the first instance.").

the evidence that Plaintiff claims is relevant to Listing 8.06, including her golf ball sized swollen glands, underarm swelling, and hidradenitis in both axillae. (R. at 27–29.) But Defendant does not make this argument. Nor could it prevent a remand here, as the Third Circuit's recent decision in *Fullen v. Comm'r of Soc. Sec.* illustrates. 705 F. App'x 121, 123–24 (3d Cir. 2017).

In *Fullen*, the ALJ found that the plaintiff did not meet any Listing, including Listing 8.06. *Id.* at 123. On appeal, the plaintiff claimed that the ALJ erred because, like here, the ALJ failed to address Listing 8.06 "with any particularity," which, the plaintiff argued, prevented meaningful appellate review. *Id.* But the Third Circuit disagreed. *Id.* The panel reasoned that although the ALJ "d[id] not discuss Listing 8.06 specifically," he did state that he considered the medical evidence pertaining to the plaintiff's "medically determinable impairments in conjunction with all relevant severity criteria" of Listing 8.0 for skin disorders. *Id.* These statements, the panel continued, were "supported by the ALJ's analysis at step four," where the ALJ analyzed the plaintiff's skin conditions "fully," and noted, among other things, that Plaintiff's hidradenitis suppurativa was "only mild to moderate." *Id.* at 124. The panel reiterated, however, that while "the opinion, read as a whole, provides sufficient detail to permit our meaningful review," the "better course of action, particularly in a case where a claimant's condition is explicitly referenced in the Listings, is for the ALJ to specifically discuss the relevant Listing." *Id.* at n.5.

Here, the Court cannot conclude that substantial evidence supports the ALJ's step three conclusion even reading the decision as a whole. Unlike in *Fullen*, the ALJ did not acknowledge Plaintiff's severe condition or Listing 8.0 in even a conclusory manner at step three. Nor did he baldly state that he compared its requirements with the record evidence. Of course, an ALJ need not always "identify or analyze the most relevant Listing" to satisfy the step three standards. *See*

*Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 471 (3d Cir. 2005). But here, the ALJ's later discussion of the evidence that could be relevant to Listing 8.06 does not—unlike in *Fullen*—help explain *why* Plaintiff did not meet the Listing. Instead, it largely mentions that evidence without analysis that clearly precludes a finding for Plaintiff on Listing 8.06. As the *Fullen* panel noted, the better course in this case is for the ALJ to specifically discuss Listing 8.06.[2]

B. **Remaining Arguments**

Because the Court remands on step three, it does not reach the parties additional arguments. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x. 155, 156–157 (3d Cir. 2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision."). Although on remand, the ALJ may well reach the same conclusion, he must explain his reasoning accordingly.

---

[2] *See Karstein*, 2018 WL 5669172, at *7 n.2 (D.N.J. Oct. 31, 2018) (remanding because "[e]ven if these or other later statements by the ALJ could be viewed as supporting the ALJ's otherwise conclusory step three finding . . . they do not, in themselves, explain *why* the ALJ concluded that the medical evidence did not meet the listing in this case" (emphasis in original)); *Tursky v. Colvin*, No. 14-cv-03241, 2015 WL 4064707, at *18 (D.N.J. July 2, 2015) (remanding for insufficient step three analysis because even though the ALJ "noted some evidence" at other steps that could support ALJ's summary conclusion that the plaintiff did not meet Listing 1.04, those later observations did not "set forth the reasons for [her] decision" or "explain[] her findings," leaving the court with no way to determine if the later noted evidence substantiated the ALJ's step three finding).

## IV. CONCLUSION

For the foregoing reasons, the Court **VACATES** the decision denying benefits and **REMANDS** this matter for further proceedings. An Order shall issue.

Dated: 3/26/2019                                          /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge