**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| UCHENNA OBIANYO, | Civil No. 17-1467 (NLH/KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| U.S.C.I.S. PENNSYLVANIA, et al., | |
| Defendants. | |

---

**APPEARANCES**:

UCHENNA OBIANYO
1175 MARLKRESS RD. 32651
CHERRY HILL, NJ 08034

  *Appearing pro se.*

JORDAN MILOWE ANGER
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET
7TH FLOOR
NEWARK, NJ 07102

  *On behalf of Defendants.*

**HILLMAN, District Judge**

This case concerns claims against the Philadelphia, Pennsylvania and Mount Laurel, New Jersey Offices of the United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants") alleging that Plaintiff Uchenna Obianyo was wrongfully denied naturalization and citizenship.

Presently before this Court is Plaintiff's second Motion to Expedite and Defendants' Motion for Summary Judgment and partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  For the reasons discussed below, this Court will deny Plaintiff's Motion to Expedite, grant Defendants' partial Motion to Dismiss for Lack of Subject Matter Jurisdiction, and grant Defendants' Motion for Summary Judgment.

**BACKGROUND**

In October 1989, Plaintiff Uchenna Obianyo, a native and citizen of Nigeria, entered the United States on a visitor visa.  (Defs.' Ex. B.)  In April 1992, Plaintiff married a U.S. citizen in Tennessee.  Plaintiff was granted Legal Permanent Resident ("LPR") status May 10, 1994. (Defs.' Ex. A.)

While residing in Tennessee, Plaintiff was charged with three counts of stalking under Tennessee Code Annotated § 39017-315 on January 27, 1996.  He pled guilty before the General Sessions Court of Davidson County, Tennessee in February 1997.  (Defs.' Ex. C.)  As part of the special conditions of his sentence, Plaintiff was ordered to reside with or be supervised by family members in Philadelphia, Pennsylvania. Id.  In April

---

[1] The Court construes Plaintiff's letters, received September 14, 2018 ("Pl.'s Resp. A") and October 9, 2018 ("Pl.'s Resp. B") as responses to Defendants' Motion for Summary Judgment.  Plaintiff did not otherwise file a timely response to Defendants' Motion for Summary Judgment.

2

2000, Plaintiff was again charged with stalking, this time under 18 Pennsylvania Consolidated Statutes § 2709.1. (Defs.' Ex. D.) Plaintiff pled guilty to stalking before the Delaware County Court of Common Pleas. (Defs.' Ex. D.)

In April 1999, Plaintiff filed the first of five Applications for Naturalization, Form N-400, ("Form One"). Plaintiff withdrew Form One on January 18, 2001. (Defs.' SOMF ¶ 7.) That same month, Plaintiff was issued a Notice to Appear ("I-862") that alleged Plaintiff was removable under 8 U.S.C. § 1227(a)(2)(E)(i) (allowing removal of an alien when convicted of the crime of stalking); additional removability charges were added in July 2001 under 8 U.S.C. § 1227(a)(2)(A)(ii) (allowing removal of an alien when convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct"). (Defs. Ex. F.)

Immigration Judge Walter A. Durling ("IJ Durling") issued a removal order on October 2, 2001. (Defs.' Ex. G.) Plaintiff was again found removable on April 29, 2004 by IJ Durling but was granted withholding and deferred removal under Article 3 of the United Nations Convention Against Torture.[2] 8 C.F.R. § 208.16(c)

---

[2] Relying on both Senathirajah v. INS, 157 F.3d 210, 221 (3d Cir. 1998) and Zubeda v. Ashcroft, 333 F.3d 463, 473 (3d. Cir. 2003) (holding that torture constitutes suffering that is purposefully inflicted or a foreseeable consequence of a deliberate conduct), IJ Durling granted withholding and deferred removal because Plaintiff would likely be subject to an indeterminate length of

3

(regarding withholding removal); 8 C.F.R. § 208.17(a) (regarding deferred removal); (Defs.' Ex. H.).

Plaintiff filed his second Form-400 ("Form Two") in September 2012; the third was filed in April 2013 ("Form Three"); the fourth was filed in January 2016 ("Form Four"); and the fifth, and final, ("Form Five") was filed in April 2016. The Philadelphia, Pennsylvania USCIS Office denied Plaintiff's Form Two and Form Three in November 2013. In August 2014, Plaintiff filed a Request for Hearing on a Decision in Naturalization Proceedings ("Form N-336") which was denied by the Philadelphia Office in December 2014. Plaintiff's Form Four and Form Five were denied by the Mt. Laurel, New Jersey USCIS Office in August 2016. Plaintiff did not file a Form N-336 to appeal the applications denied by the Mt. Laurel Office.

Plaintiff filed his initial complaint alleging he was wrongfully denied naturalization and citizenship on March 3, 2017, seeking relief (1) in the form of an appeal of the USCIS decisions denying his applications for naturalization because of his previous criminal convictions and deportation proceedings and (2) petitioning for mandamus to compel USCIS officers to

---

imprisonment as a result of his criminal record, life-threatening prison conditions, and a lack of access to his necessary mental health medication. (Defs.' Ex. H 11-12.)

4

administer the Oath of Citizenship and grant Plaintiff his Certificate of Citizenship.

This Court granted Plaintiff's application to proceed <u>in forma pauperis</u> on January 3, 2018.  Plaintiff filed his first Motion to Expedite in March 2018, which was denied, without prejudice, by this Court's April 6, 2018 Order.  On July 13, 2018 Defendants filed an amended Motion for Summary Judgment and partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.  Plaintiff filed his second Motion to Expedite on September 14, 2018 ("Pl.'s Resp. A") which was unopposed by Defendant.  The Court received a letter from Plaintiff on October 11, 2018 ("Pl.'s Resp. B") which – together with Plaintiff's September 14, 2018 Motion to Expedite – this Court construes as a response to the Defendants' Motion for Summary Judgment.

The Court finds these issues fully briefed and ripe for adjudication.  The Court construes Plaintiff's complaint and responses as (1) an appeal of the USCIS decision denying his applications for naturalization and (2) a request for mandamus ordering an officer of USCIS to administer the Oath of Citizenship and granting Plaintiff his Certificate of Citizenship.

## ANALYSIS

**A. Standard of Review**

The denial of a naturalization application is reviewed <u>de novo</u>. 8 U.S.C. § 1421(c). The applicant has the burden of proving "by a preponderance of the evidence that he or she meets all the requirements for naturalization." <u>Ijomah-Nwosu v. Holder</u>, No. 14-2527, 2015 WL 5097925, at *1 (D.N.J. Aug. 31, 2015) (citing 8 C.F.R. § 316.2(b)). In conducting its review, the Court is not bound by the factual or legal conclusions of the USCIS. 8 U.S.C. § 1421(c); <u>see also</u>, <u>Shah v. Thompson</u>, No. 11-3082, 2012 WL 6131122, at *1 (D.N.J. Dec. 10, 2012) (citing <u>Bustamante v. Napolitano</u>, 582 F.3d 403, 410 (3d. Cir. 2009) ("[T]he court is required to make its own findings of fact and conclusions of law.")).

**B. Subject Matter Jurisdiction**

A district court is a court of limited jurisdiction and may review a USCIS decision in limited circumstances. Before an applicant for naturalization may seek review of a USCIS denial before a district court,[3] he must exhaust administrative

---

[3] The Court also construes certain arguments made by Plaintiff as an attempt to seek a review of the basis for his removability. Insofar as Plaintiff's remaining claims could be construed as an appeal of the finding of removability by IJ Durling and the Board of Immigration Appeals ("BIA"), subject matter jurisdiction rests with the appeals courts, not this court. <u>See</u> <u>Bonhometre v. Gonzales</u>, 414 F.3d 442, 446 (3d Cir. 2005) (relying on 8 U.S.C. § 1252 which requires petitions for review

6

remedies. Exhaustion of administrative remedies is a jurisdictional prerequisite; this court does not have the power to hear a claim without such exhaustion. Omar v. Mueller, 501 F. Supp. 2d 636, 641 (D.N.J. 2007).

One of the exhaustion requirements necessary in the review of naturalization decisions is that an applicant file a Form N-336 and receive a ruling from the USCIS. A plaintiff whose application for naturalization has been denied may, after a hearing before an immigration officer, seek review of his denial before a district court. 8 U.S.C. § 1421(c); Omar, 501 F. Supp. 2d at 641 (D.N.J. 2007) (holding that the exhaustion of administrative remedies is required for jurisdiction in USCIS cases) (citing 8 U.S.C. § 1447(a)); McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

---

to be filed within 30 days of a final decision with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings); Gonzalez-Lora v. Hollingsworth, No. 13-1961, 2013 WL 6230289, at *2 (D.N.J. Dec. 2, 2013)(citing 8 U.S.C. § 1252(a), (b) which grants jurisdiction over challenges to removal to courts of appeals). In cases such as this, when there appears to be a lack of jurisdiction, a civil court may – if it is in the interest of justice – transfer the case to the appropriate venue. 28 U.S.C. § 1631. This Court finds – assuming for the sake of argument that there was a timely appeal – that it would not be in the interest of justice to transfer Plaintiff's claims to the Third Circuit, as the Third Circuit has previously stated that it would deny Plaintiff's petition for review, including on grounds related to Plaintiff's claims to be a U.S. national. See, e.g., Gonzalez-Lora v. Hollingsworth, No. 13-1961, 2013 WL 6230289, at *6-7 (D.N.J. Dec. 2, 2013).

Plaintiff has failed to demonstrate that he has exhausted his administrative remedies as to his first,[4] fourth, and fifth N-400 applications. Plaintiff did not file a Form N-336 as required under 8 U.S.C. § 1447(a) before seeking district court review.[5] This Court lacks subject matter jurisdiction under Rule 12(b)(1) over Plaintiff's first, fourth, and fifth N-400 applications because Plaintiff failed to exhaust the administrative remedies mandated by statute. As such, claims relating to Form Four and Form Five will be dismissed, without

---

[4] Although under 8 U.S.C. §§ 1421(c) and 1447(a), Form One may be treated identically to Form Four and Form Five, there is a separate basis for this Court to withhold subject matter jurisdiction. The mootness doctrine requires: "(1) that the underlying dispute presents 'live' issues, and (2) that the parties have 'a legally cognizable interest in the outcome' — that is, a personal stake in the dispute." Gayle v. Warden Monmouth Cnty. Corr. Inst., 838 F.3d 297, 303 (3d Cir. 2016) (quoting Chafin v. Chafin, 568 U.S. 165, 171-72(2013)). Here, there are no "live" issues and Plaintiff has no "legally cognizable interest" in Form One because he voluntarily withdrew that application mooting any issues related to it.

[5] Subject matter jurisdiction to review USCIS decisions vests in a federal district court either through a denial of applications for naturalization, as noted supra, or when there is a failure of the USCIS to make a determination within 120 days after a hearing regarding a decision of naturalization. 8 U.S.C. § 1447(b); Omar, 501 F. Supp. 2d at 639. The clock does not begin to run when an application is submitted, only after a hearing has been completed. Id. Plaintiff argues in his October 9, 2018 letter that one N-400 application is still pending after four years. It is unclear to the Court which application Plaintiff may be referring to by this statement, but it appears he cannot be referring to his fourth or fifth applications. Those were filed in 2016. As to the other applications, the argument is moot, as explained supra and infra.

prejudice.[6] Because the Court finds that claims under Form One are moot because Form One was withdrawn at the USCIS, the Court will dismiss those claims with prejudice.

---

[6] This case presents the unusual circumstance of identical claims being brought under several different applications, some of which have been properly exhausted and some of which have not. To be clear, it appears the same claims which are dismissed infra are also brought under Form Four and Five. But, because the Court has found it does not have subject matter jurisdiction, it is obligated to dismiss those claims without prejudice and without a decision on the merits. The Court realizes the inefficiencies created by this decision. Plaintiff will be required to exhaust his various claims properly and, if still unhappy with the USCIS decision, may choose to return to the District Court on any newly exhausted claim. While the Court may come to the same conclusion either on the basis of preclusion law or the underlying merits, it cannot dismiss those claims with prejudice at this point because the relevant statute makes clear the Court lacks the requisite subject matter jurisdiction. See 8 U.S.C. § 14219(c) ("A person whose application for naturalization under this title is denied, after a hearing before an immigration officer under section 336(a), may seek review of such denial before the United States district court o[f] the district in which such person resides . . . ."). The Court is aware that at least the Ninth Circuit holds that the exhaustion requirement is prudential rather than jurisdictional and is susceptible to a futility analysis. Eche v. Holder, 694 F.3d 1026, 1028 (9th Cir. 2012). In the absence of binding Third Circuit decisional law, this Court holds the requirement is jurisdictional and will not engage in a futility analysis. Compare Shweika v. Ludington, No. 09-cv-11781, 2015 U.S. Dist. LEXIS 146635, at *35-36 (E.D. Mich. Oct. 29, 2015) (stating that the Sixth Circuit would view exhaustion as prudential and would allow a futility analysis), with Hamod v. Kelly, No. 16-cv-1191, 2017 U.S. Dist. LEXIS 136942, at *9-19 (D. Minn. June 12, 2017) (stating that the Second, Fifth, and Eleventh Circuits have held exhaustion is jurisdictional); Abuirshaid v. Johnson, 155 F. Supp. 3d 611, 616-17 (E.D. Va. 2015) (discussing why the Ninth Circuit's decision is textually unsupported and may violate Supreme Court precedent); Estrada v. Napolitano, No. 11-940, 2011 U.S. Dist. LEXIS 46798, at *8-9 n.2 (E.D. Pa. Apr. 29, 2011) (rejecting a futility argument because "statutory exhaustion requirements deprive us of jurisdiction

The Court maintains subject matter jurisdiction over Plaintiff's second and third applications under 8 U.S.C. § 1421(c) because he has exhausted the required administrative remedies. Thus, this court maintains subject matter jurisdiction over those claims and will address their merits below.

**C. Motion for Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, . . . demonstrate the absence of an issue of material fact" and the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317,322-23 (1986) (citing FED. R. CIV. P. 56) (internal quotations omitted). The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 341, 347 (3d Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

over a given case." (quoting Lin v. Att'y Gen., 543 F.3d 114, 120 (3d Cir. 2008)); Baez-Fernandez v. INS, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005) (holding where statutory exhaustion is required, exhaustion is jurisdictional and the futility exception is inapplicable).

Anderson, 477 U.S. at 248. A fact is "material" if there are disputes of the facts that might affect the outcome of the suit under the governing law. Id. The non-moving party bears the burden to sufficiently establish the existence of an essential element of its case – beyond the pleadings – on which it bears the burden of proof. Failure to do so entitles the moving party to judgment as a matter of law. Goldstein v. Repossessors, Inc., 815 F.3d 142, 146 (3d Cir. 2016); see also Celotex Corp., 477 U.S. at 324. "If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party." SEC v. J.W. Barclay & Co., Inc., 442 F.3d 834, 849 (3d Cir. 2006).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the

11

moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

### D. Motion for Summary Judgment

Plaintiff seeks two types of relief from the court. First, Plaintiff seeks to appeal the decisions of the USCIS denying his N-400 Applications for Naturalization on the basis that

Plaintiff's criminal convictions for stalking were allegedly, in his words, "quashed" and were wrongly considered in the denial of his N-400 applications and that his deferred or withheld removal otherwise restored his LPR status. Second, Plaintiff seeks a writ of mandamus from the Court ordering USCIS officers to either (1) administer the Oath of Citizenship and grant Plaintiff his Certificate of Citizenship, or (2) expedite the proceedings. Defendants assert that Plaintiff's criminal conviction and deportation order disqualify him from LPR status and the opportunity to apply for naturalization. The Court considers each argument in turn.

### 1. Plaintiff's Criminal Charges

Plaintiff alleges that his convictions for stalking in Tennessee and Pennsylvania were "quashed"[7] by the criminal court judges in the respective states and should not be brought to bear against him because they are not outstanding charges. (Pl.'s Resp. A; Pl.'s Resp. B.) This Court agrees that Plaintiff's charges are not pending; however, this Court also

---

[7] In the Court's experience, criminal prosecutions are not "quashed." Usually, this term applies to a summons, subpoena, or warrant. The Court interprets Plaintiff's use of the term to allege variously that the criminal charges were dismissed, Plaintiff was acquitted, or – after conviction – the criminal records were expunged. As detailed infra, Plaintiff has provided no proof that these charges were dismissed, that he was acquitted, that the records were expunged, or that some legal process was actually "quashed."

finds that Plaintiff pled guilty to the stalking charges in both Tennessee and Pennsylvania because Defendants have produced documentary evidence showing this to be the case. (Defs.' Ex. C; Defs.' Ex. D.)

Plaintiff, as was his duty once Defendants produced such evidence, has failed to produce contrary evidence that would suggest that he was not convicted of these charges. This Court must rely on the factual record before it that shows (1) that Plaintiff pled guilty to charges of stalking, and (2) that the stalking convictions were the grounds for IJ Durling's finding of removability. (Defs.' Ex. H.) This Court finds that Plaintiff's criminal charges from Tennessee in 1996 and Pennsylvania in 2000 were correctly considered in the course of IJ Durling's decision finding Plaintiff removable while also granting a withholding of the removal process.

### 2. Lawful Permanent Resident Status

Defendants argue Plaintiff does not meet the statutory requirements for naturalization because he is not a lawful permanent resident and is therefore ineligible for naturalization. (Defs.' Mot. Summ. J. 8-10.) Plaintiff resists summary judgment on the grounds that his deferred and withheld deportation status has restored his LPR status. Plaintiff asserts that because he was granted withheld or deferred

removal, he is no longer engaged in or the subject of deportation proceedings. (Pl.'s Resp. A.)

To qualify for naturalization, an applicant must have (1) resided continuously, after being lawfully admitted as a permanent resident, for at least five years, (2) resided continuously in the United States from the time of application until the admission to citizenship, and (3) during all periods, have been and still be a person of good moral character. 8 U.S.C. § 1427. No person against whom there is an outstanding final finding of deportability shall be eligible for naturalization. 8 U.S.C. § 1429.

It is not within the power or province of this Court to make judicial exceptions to statutory requirements for individuals seeking naturalization. United States v. Macintosh, 283 U.S. 605, 626 (1931). Judicial deference to the Executive Branch – which is charged with the enforcement of immigration and naturalization laws – is especially appropriate in the immigration and naturalization context. I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999) (citing I.N.S. v. Abudu, 485 U.S. 94, 100 (1988)). The prerequisites for naturalization and citizenship require strict compliance and only those who comply with those statutory requirements are to be granted the right of naturalization and citizenship. Fedorenko v. United States, 449 U.S. 490, 506 (1981) (holding that courts must

exercise strict compliance with all congressionally imposed prerequisites for citizenship) (internal citations omitted); United States v. Ginsberg, 243 U.S. 472, 474-75 (1917) ("An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress.").

The power to grant citizenship has not been conferred upon the federal courts, and once there has been a determination that a person does not qualify for citizenship because of failure to satisfy the statutory requirements, the court has no discretion to ignore that finding and grant citizenship. Koszelnik v. Sec'y of Dep't of Homeland Sec., 828 F.3d 175, 182 (3d Cir. 2016) ("[This court] lacks equity powers to override statutory requirements" (citing I.N.S. v. Pagilinan, 486 U.S. 875, 885 (1988)).

Here, Defendants' Motion alleges that Plaintiff is not eligible for naturalization because he does not have LPR status as a result of his deportation proceedings and his deferred deportation order. 8 C.F.R. § 1.2 ("Such status [as a Lawful Permanent Resident] terminates upon final administrative order of exclusion, deportation, or removal.")  Defendants assert that this deportation order disqualifies Plaintiff from naturalization. 8 U.S.C. § 1429 ("[N]o person shall be

naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest.").

Plaintiff responds in his September 14, 2018 letter that by granting deferred or withheld removal, the Immigration Court provided "an indefinite protection or immunity" that is otherwise "not revocable" and which had the effect of restoring "Plaintiff [to] his former status of Legal Permanent Resident." (Pl.'s Resp. A 2.)

The record supports the contrary finding and Plaintiff produces no record evidence to support his assertions. (See, e.g., Defs.' Ex. L.) In fact, courts have routinely held the opposite of Plaintiff's assertion: when an alien has been granted LPR status but later loses that status, he is ineligible to acquire LPR status again, even if granted withholding or deferred removal. Yusupove v. Att'y Gen. of U.S., 650 F.3d 968, 978 (3d Cir. 2011)(finding that withholding, like removal does not grant a basis for an adjustment of status); Gutnik v. Gonzales, 469 F.3d 683, 685 (7th Cir. 2006) ("Withholding of removal does not prevent the government from removing him to some other country, nor does it offer him any avenue to regain his permanent resident status."); Robleto Pastora v. Holder, 591 F.3d 1051, 1061 (9th Cir. 2010) (citing Saintha v. Mukasey,[8] 516

---

[8] Saintha v. Mukasey, 516 F.3d 243 (4th Cir. 2008) applies statutory requirements for refugees and deals with an individual

F.3d 243, 253 (4th Cir. 2008) ("[I]t is logical to conclude that an alien . . . who previously acquired permanent resident status but was later rendered removable by the commission of multiple crimes, is ineligible to acquire LPR status again . . . .")).

Plaintiff also asserts that he is a national of the United States because his March 1999 amended N-400 application (Defs.' Ex. E.) was signed by a USCIS official.  Plaintiff has previously sought Third Circuit Court of Appeals review of the decision denying a grant of naturalization on these very grounds.  The Third Circuit held both that it lacked jurisdiction to consider Plaintiff's claims that he was not subject to removal because he had failed to exhaust his administrative remedies and, in the alternative, that Plaintiff was not a national of the United States, despite his application in 1998-1999 for naturalization. Obianyo v. Att'y Gen. of the U.S., 171 F. App'x 390 (3d Cir. 2006).

---

who had refugee status and then applied for and was granted LPR status. Id. at 253.  This Court finds the scenarios reasonably similar so as to justify an analogous application of the law to the present case.  There, Plaintiff had been ordered removed after multiple criminal convictions and lost his status as a Lawful Permanent Resident and was denied his request for it to be reinstated. Id.  Similarly here, Plaintiff has had removal proceedings stemming from multiple convictions and, despite Plaintiff's deferred status, is not eligible to be considered for LPR status. See Yusupove v. Att'y Gen. of U.S., 650 F.3d 968, 978 (3d Cir. 2011).

When viewed in the light most favorable to the Plaintiff, this Court finds no genuine issues of material fact alleged by Plaintiff that would allow him to overcome Defendants' Motion for Summary Judgment because his status as a Legal Permanent Resident terminated upon his initial order of removal in 2001. The record before the Court reflects that Plaintiff was granted withheld or deferred removal by IJ Durling and that Plaintiff is neither a national nor LPR of the United States. Viewing the record in the light most favorable to the Plaintiff, this Court finds no genuine issue of material fact regarding Plaintiff's LPR status that would preclude granting Defendants' Motion for Summary Judgment on the grounds that Plaintiff is ineligible for naturalization.

### 3. Plaintiff's Demand for Mandamus

Plaintiff seeks mandamus from the Court requiring the USCIS to either administer the Oath of Citizenship and grant him the Certificate of Citizenship or, in the alternative, to expedite his naturalization proceedings. This Court maintains jurisdiction over Plaintiff's mandamus petition under 28 U.S.C. § 1361. ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").

19

Based on the foregoing analysis, the Court cannot grant Plaintiff's mandamus petition because he still does not meet the statutory requirements of 8 U.S.C. § 1429. This Court is unable to circumvent these requirements for naturalization, including the requirement that applicants for naturalization must have LPR status. 8 U.S.C. § 1429. This Court cannot compel agency action where it has no legal authority to do so. Plaintiff's request for mandamus in administering the oath, granting his certificate of citizenship or, in the alternative, expediting the processing of his Form N-400 will be denied.[9]

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction will be granted as to Plaintiff's claims concerning his fourth and fifth Form N-400, without prejudice. Plaintiff's claims concerning his first Form N-400 will be denied, with prejudice, as those claims are moot. Defendants' Motion for Summary Judgment will be granted as to Plaintiff's remaining claims, with prejudice.

An appropriate Order will be entered.

Date: March 25, 2019     s/ Noel L. Hillman  
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.

---

[9] Plaintiff's first Motion to Expedite was filed March 14, 2018 and an Order denying the Motion without prejudice was entered April 6, 2018. Plaintiff's second Motion to Expedite was filed September 14, 2018 and was unopposed by Defendants. In light of the discussion above granting Defendants' Motions, Plaintiff's second Motion to Expedite will be denied as moot.